IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

ALVAREZ V. CHOI

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ALBERTO I. ALVAREZ, APPELLANT,

V.

JONGHYUN CHOI, APPELLEE.

Filed July 2, 2019.    No. A-18-525.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Ryan D. Caldwell, of Caldwell Law, L.L.C., for appellant.

Michael S. Kennedy, of Kennedy Law Firm, P.C., L.L.O. for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Alberto I. Alvarez appeals from an amended decree of dissolution in the district court for Douglas County, dissolving his marriage to Jonghyun Choi. Alvarez challenges the court's denial of his request to remove the parties' children to Florida, the parenting time he was awarded, and the award of joint legal custody, with Choi having final decisionmaking authority. Based on the reasons that follow, we affirm.

### BACKGROUND

Alvarez and Choi were married in Hong Kong, China, in February 2012. They moved to Omaha, Nebraska, in August 2012. Two children were born of the marriage: Adriana, born in 2012, and Leonardo, born in 2013. Alvarez filed an amended complaint for dissolution of marriage in July 2015, in which he sought sole custody of the children and requested permission to remove

- 1 -

the children from Nebraska to Florida. Choi filed an answer to the amended complaint opposing Alvarez's requests for sole custody and removal to Florida and seeking sole custody of the children for herself. While the case was pending, Alvarez was awarded temporary custody in June 2015. However, in September temporary custody was awarded to Choi.

Trial was held in March 2016. Alvarez testified that he and Choi both took care of the children. He testified that he was the "breadwinner" for the family, but would help with the children in the evenings and on weekends. The children went to daycare during the weekdays, but Choi did not work. He claimed that he was better suited to have sole custody of the children.

Alvarez testified that the children's behavior has regressed since Choi was awarded temporary custody. He claimed that Leonardo's language abilities have decreased and he had reverted back to wearing diapers. Alvarez also testified that Leonardo hits everyone, including Choi. He alleged that the children are addicted to television and that Choi does not set boundaries or rules for them.

Rosanna Baldwin, who worked at the children's daycare and had known the children for 15 months at the time of trial, testified that she saw a difference in the children's behavior when Alvarez had temporary custody. She stated that before Alvarez had temporary custody, the children's behavior was "awful." After Alvarez got custody, the children were calmer, would listen to the daycare providers, and played better with the other children. Baldwin further testified that Choi cannot control the children. She testified that they run out of the daycare when Choi picks them up, sometimes running into the street. Baldwin stated she is worried about their safety.

Alvarez also presented evidence to support his request to remove the children to Florida. He testified that at the time the divorce action was filed, he was employed in Omaha with the Federal Occupation Safety and Health Administration (OSHA) as a compliance officer. He had since accepted a job working for OSHA in Jacksonville, Florida, and was living there at the time of trial. He testified that the job in Florida is the same job he had in Nebraska. He has the same job title and is paid based on the same "General Schedule" level. He testified that he took the job in Florida because there were more opportunities for growth and advancement than in the Omaha office and it involved less travel. He also wanted to move to Florida because he had numerous family members who lived in various cities throughout the State, including his parents, grandparents, siblings, aunts and uncles, and cousins. He presented limited evidence about the school the children would attend in Florida when they reached school age.

Choi testified that she was the children's primary caregiver and that she did most of the cooking for the family and cleaning of the home. She explained that the children went to daycare even though she was not working because Alvarez told her it was already paid for so they should go. Choi also presented testimony from several witnesses to show that she was a good mother and should be awarded custody. These witnesses, who were friends of Choi's, stated that the children are under control in Choi's care, are happy, polite, listen to their mother, and are disciplined appropriately. They saw no safety concerns in Choi's care. The witnesses testified that Choi works with the children on their English and that their skills have improved.

At the end of trial, the court announced its decision regarding custody. The court found that Alvarez had not met his burden of proving a legitimate reason for leaving Nebraska, and even if he had, he did not prove that such move would be in the best interests of the children. The court

found that both parents were fit and proper parents to have care, custody, and control of the children, but awarded Choi physical custody, subject to Alvarez's parenting time. It awarded the parties joint legal custody, with Choi having final decisionmaking authority.

Following trial, the court entered a decree of dissolution in August 2016 and an amended decree of dissolution in September. Alvarez appealed and we remanded the matter to the trial court because there was no child support worksheet attached to the order as required by Neb. Ct. R. § 4-203 (rev. 2011). Following remand, the court entered another amended decree of dissolution in April 2018. Alvarez now appeals from that decree.

The April 2018 amended decree awarded Choi sole physical custody of the children and awarded the parties joint legal custody, with Choi having the final decisionmaking authority. The amended parenting plan, incorporated into the decree, set forth Alvarez's parenting time. He was given regular parenting time of up to 72 hours each month, half of Christmas/Holiday break, spring break, and two separate 2-week periods of time in the summer.

## ASSIGNMENTS OF ERROR

Alvarez assigns that the trial court erred in (1) denying his request to remove the children to Florida, (2) ordering a parenting time schedule that was not reasonable or in the children's best interests, and (3) awarding the parties joint custody, with Choi having ultimate decisionmaking authority.

## STANDARD OF REVIEW

Child custody and visitation determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Welch v. Peery*, 26 Neb. App. 966, 925 N.W.2d 375 (2019). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Id.*

## ANALYSIS

*Removal of Children to Florida.*

Alvarez first argues that the trial court erred in denying his request to remove the children to Florida. He contends that he met the requirements necessary for permission to remove the children from the jurisdiction, specifically, that he had a legitimate reason for removal and that it was in the children's best interests to move to Florida.

In his first assigned error, Alvarez includes a statement that the court erred in finding it was not in the best interests of the children for him to have custody in Florida. And in his summary of the argument section of his brief, he states that the court abused its discretion in finding that it was not in the best interests of the children to award him custody. However, in the argument section of his brief, his first argument only relates to the removal issue, and he does not specifically argue that the court erred in awarding Choi custody. To be considered by an appellate court, an error

must be both specifically assigned and specifically argued in the brief of the party asserting the error. See *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015).

Alvarez requested sole custody and permission to remove the children from Nebraska as part of the original complaint for dissolution of his marriage to Choi. This court has held that in cases involving an initial custody determination and a request for removal, such as the present case, a trial court should first make a custody determination, and then conduct a removal analysis. See *Rommers v. Rommers*, 22 Neb. App. 606, 858 N.W.2d 607 (2014). Accordingly, if the parent requesting removal is not awarded custody, then a removal analysis is not necessary.

After considering all the evidence presented, the court found that both parents were fit and proper parents to have care, custody, and control of the children, that a joint physical custody arrangement was not feasible due to the circumstances, and awarded Choi sole physical custody. Once the court made the decision to award custody to Choi, there was no reason to determine whether Alvarez proved the requirements necessary for removal. Although the court did discuss the requirements for removal at the end of trial and concluded that they had not been met, it was not necessary for the court to address the requirements.

We conclude that Alvarez's argument in regard to removal is irrelevant because he was not awarded custody. Therefore, we need not address Alvarez's first assignment of error.

*Alvarez' Parenting Time.*

Alvarez next assigns that the trial court erred in ordering a parenting time schedule that was not reasonable or in the children's best interests. The parenting time awarded to Alvarez included up to 72 hours (3 days) per month, half of Christmas/Holiday break, spring break, and two separate 2-week periods in the summer. The court also ordered Skype sessions with the children three times per week.

The trial court has discretion to set a reasonable parenting time schedule. *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016). The determination of reasonableness is to be made on a case-by-case basis. *Id*. Parenting time relates to continuing and fostering the normal parental relationship of the noncustodial parent. *Id.* The best interests of the children are the primary and paramount considerations in determining and modifying visitation rights. *Id*.

The evidence showed that between August 2015, when Alvarez moved to Florida, and March 2016, when trial took place, Alvarez had only visited the children in Nebraska once. During that same time, the temporary order gave Alvarez a reduction in child support so he could afford to visit the children every 30 days. Alvarez testified that he did not visit more than once because it was "too costly" and he did not have the funds to come visit. He also testified about the amount of time it takes to drive from Jacksonville to Omaha and how much vacation leave he has to use. The amended decree gives Alvarez up to 72 hours of parenting time every month, as well as other times throughout the year. It also gives him time to talk and interact with the children three times per week through Skype. Given the distance between Nebraska and Florida and the expense of traveling in between the two, the trial court's parenting time schedule is reasonable. We find no abuse of discretion in the parenting time awarded to Alvarez.

*Award of Joint Legal Custody.*

Alvarez next challenges the court's award of joint legal custody, with Choi having final decisionmaking authority. Alvarez argues that by giving Choi all of the control in decision making, the award of "joint custody" is meaningless and does not promote any discussion or joint decision making between the parties.

The court stated that it gave Choi this authority because of the distance between the parties which can create problems in certain circumstances, such as an emergency situation. The court further stated that joint legal custody would ensure that Alvarez would have open and easy access to the children's medical and school information. We conclude that the court's reasoning for awarding joint legal custody with Choi having final decisionmaking authority was reasonable and we find no abuse of discretion.

## CONCLUSION

Based on the foregoing reasons, we affirm the trial court's April 2018 amended decree of dissolution in all respects.

AFFIRMED.